IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

AUTUMN A. HAGER,

                Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of the Social Security
Administration,

                Defendant.[1]

OPINION and ORDER

20-cv-788-jdp

---

Plaintiff Autumn A. Hager seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding that Hager was not disabled within the meaning of the Social Security Act. Hager contends that administrative law judge (ALJ) Luke Woltering didn't adequately consider her subjective complaints or the opinions of two doctors. The ALJ's thorough decision is supported by substantial evidence. The court will affirm the decision and cancel the hearing scheduled for August 10, 2021.

ANALYSIS

Hager sought benefits based on both physical and mental impairments, alleging disability beginning in August 2015, when she was 30 years old. R. 16, 27.[2] In a January 2020 decision, the ALJ found that Hager suffered from five severe impairments: rheumatoid arthritis, posttraumatic stress disorder, depression, generalized anxiety disorder, and a personality

---

[1] The court has updated the caption in accordance with Federal Rule of Civil Procedure 25(d).

[2] Record cites are to the administrative transcript located at Dkt. 14.

disorder with borderline tendencies. R. 16. After finding that Hager's impairments weren't severe enough to meet or medically equal the criteria for a listed disability, the ALJ ascribed to Hager the residual functional capacity (RFC) to perform light work with additional mental and physical restrictions. R. 19–20. The additional physical restrictions aren't relevant to the appeal. As for the mental health restrictions, the ALJ found that Hager can:

- understand, remember, and carry out simple work instructions;
- sustain concentration to perform simple routine tasks;
- adapt to the basic changes in routine and assignment usually found in the workplace for simple routine tasks;
- engage in independent goal-directed behavior while completing simple routine tasks;
- interact occasionally and superficially with coworkers and supervisors while performing job duties that do not involve tandem tasks, teamwork, or other jobs that are collaborative in nature; and
- have no more than brief incidental contact with the public.

Based on the testimony of a vocational expert, the ALJ found that Hager was not disabled because she could perform a significant number of jobs in the national economy, including as a housekeeper or cleaner, a folder, or a cafeteria attendant. R. 25. The Appeals Council declined review. R. 1–7. Hager now appeals to this court.

On appeal, the court's role is to determine whether the ALJ's decision is supported by substantial evidence, meaning that the court looks to the administrative record and asks "whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

**A. Subjective complaints**

The ALJ summarized Hager's subjective complaints for both her physical and mental conditions. R. 20. As for her physical symptoms, Hager said that she suffers from fatigue, chronic pain and swelling in her joints, and diminished strength or functionality in her back and extremities. As a result, she cannot walk farther than one block, stand or sit for extended periods before needing to switch positions, or engage in sustained postural or weight-bearing activities throughout the day. She spends most of her day either lying down or resting for basic symptom relief.

As for her mental symptoms, Hager said that she suffers from mood instability, loss of interest in activities, chronic depression, thought intrusion, social phobia, excessive paranoia of others, frequent yet unpredictable panic attacks, and difficulty coping with past emotional and physical trauma. As a result, she cannot sustain extended periods of concentration, complete tasks, or engage in appropriate social interaction with others, and she is prone to experiencing unpredictable periods of symptom exacerbation.

Both sides assume that Hager would have qualified as disabled under the Social Security Act if the ALJ had fully credited her subjective complaints, so the court will do the same. But the ALJ wasn't persuaded that Hager was as limited as she said she was. He offered the following reasons:

- Hager's healthcare providers focused on conservative treatments for her physical and mental conditions, and the record did not show that "more serious treatment modalities were contemplated or deemed necessary." R. 21, 23.

3

- Hager failed to comply with directions from healthcare providers to exercise, quit smoking, and eat a healthy diet to address symptoms related to her rheumatoid arthritis. R. 21.

- Hager missed appointments for follow-up treatment, and there were significant gaps in treatment for Hager's rheumatoid arthritis. R. 21.

- Hager did not consistently seek mental health treatment. R. 23.

- Hager discussed symptoms related to rheumatoid arthritis infrequently at medical appointments. R. 21.

- Hager often denied depressive, anxiety-based, or mood-related symptoms, and healthcare providers "regularly observed that she had normal mood, affect, thought processes, thought content, psychomotor capabilities, and overall appropriate psychiatric functioning during the period of alleged disability." R. 18, 23, 24.

- Hager maintained meaningful social relationships with friends and family. R. 18.

- Hager often attributed her mental difficulties to events such as multiple miscarriages and failed romantic relationships rather than to psychological pathologies. R. 19, 23.

- Healthcare providers "repeatedly observed that she had normal or only slightly diminished strength, coordination, reflexes, sensation, psychomotor capabilities, or range of motion in her back, upper extremities, and lower extremities." R. 22.

Hager discusses only two of these reasons in her brief: (1) she sought little treatment for her conditions; and (2) her medical records did not show any significant psychological abnormalities. Hager's failure to address many of the ALJ's reasons for declining to credit all of Hager's subjective complaints would be reason enough to uphold the ALJ's analysis on this issue. An ALJ's credibility determination doesn't have to be perfect. *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). Rather, it is enough that the ALJ "provide some evidence supporting her determination." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). So Hager isn't entitled to a remand simply because some of the ALJ's reasons aren't supported by the record. *See id.* (upholding ALJ's credibility assessment even though some of his reasoning was not

4

supported by the record). In any event, Hager hasn't shown that either of the reasons she challenges was unsound.

1. **Failure to seek treatment**

Hager says that the ALJ erred by failing to give her an opportunity to explain why she didn't seek more treatment for her conditions, and she suggests that the reason may have been lack of insurance, childcare responsibilities, or concerns about side effects of medications. As an initial matter, this argument overlooks a significant component of the ALJ's reasoning regarding the limited treatment that Hager received. The ALJ relied not just on Hager's failure to *seek* treatment, but also on her healthcare providers' failure to *recommend* anything but relatively conservative treatment for her physical or mental conditions. An ALJ is entitled to rely on a healthcare provider's conservative course of treatment to support an adverse credibility determination. *See Simila*, 573 F.3d at 519. Hager doesn't point to any additional treatment that she received that the ALJ overlooked, so that is an independent basis for rejecting this argument.

Regardless, the ALJ didn't err by relying on Hager's failure to seek more treatment for her conditions. Hager doesn't challenge the ALJ's observations that there were significant gaps in her treatment and that she often declined referrals and missed follow-up appointments. To support her contention that the ALJ was required to give her an opportunity to explain the lack of treatment, Hager cites cases that are based on Social Security Ruling 96-7p, which has since been superseded by Social Security Ruling 16-3p. As the court of appeals recently observed, the new ruling does "not require the ALJ to ask Plaintiff about her failure to seek treatment. That rule provides that an ALJ must *consider* possible reasons for a failure to seek treatment." *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (emphasis added).

5

The ALJ complied with Ruling 16-3p in this case when he noted that Hager had failed to comply with her providers' recommendations to make lifestyle changes, which is evidence that her failure to seek treatment was a personal choice rather than the result of an external barrier. *See Mitze v. Colvin*, 782 F.3d 879, 881 82 (7th Cir. 2015). The ALJ also cited a doctor's note indicating that Hager hadn't scheduled mental health treatment "because she had no time" and "was not interested in following up." R. 23 (citing R. 420). Again, that response suggests that Hager simply didn't want treatment.

The commissioner also cites Hager's testimony from the administrative hearing, in which Hager said that she hadn't scheduled therapy because she "was told that it would need to be in a room over a computer screen," and she has "a lot of anxiety about electronic devices." R. 42. Hager says that she "is entitled to control her treatment modality." Dkt. 24, at 9. That's correct, but the ALJ was also entitled to find that Hager would have sought more treatment of some kind if her symptoms were as serious as she alleged.

The records Hager cites don't support a finding that she was unable to seek more treatment. She cites a record indicating that she could not work late because of childcare responsibilities, R. 268, and a section of a function report in which she said that she "did not have insurance" while she was working for St. Vincent de Paul, R. 310. But those records relate to events that occurred between 2012 and 2014, before Hager's disability onset date. R. 40 and 268. Hager points to nothing in the record suggesting that she ever missed or declined a medical appointment because she didn't have insurance or because she had childcare responsibilities. As for Hager's allegation that some medications could have interfered with her pregnancy, she doesn't point to any medications related to her severe impairments that she

declined because she was pregnant. And even if she had, that wouldn't explain why Hager missed follow-up appointments and declined referrals.

The ALJ did not err by considering Hager's failure to consistently seek treatment in the context of evaluating her subjective complaints.

### 2. Medical records indicating normal functioning

The ALJ cited several records to support his finding that Hager often denied psychological symptoms at her medical appointments and that healthcare providers observed "overall appropriate psychiatric functioning." Hager says that the records "do not match the ALJ's assertion," Dkt. 19, at 16, but the court disagrees. In each of the records the ALJ cited, Hager denied symptoms or the healthcare provider observed the absence of any symptoms. R. 399 (Hager was "alert and oriented," "cheerful," and exhibited "appropriate mood and affect"); R. 420 (Hager was "coping well" and declined mental health treatment after a miscarriage); R. 423 (provider observed "normal mood and affect"); R. 429 (Hager said that she "feels overall pretty well"); R. 458 (provider observed "appropriate affect"); R. 557 (Hager denied "depression, nervousness, mood changes, difficulty concentrating, or sleep disturbances"); R. 671 (provider observed "normal affect and mood"); R. 707 (Hager denied "depression or anxiety").

Hager says that the records cited by the ALJ aren't reliable because they weren't part of mental health examinations, and the statements and observations are too vague to be probative of Hager's mental health. That's a fair point, but Hager doesn't cite any evidence that is more helpful. Hager largely refused treatment for her mental health conditions, so the ALJ didn't have more detailed treatment records to review. Under those circumstances, the ALJ was entitled to consider the limited information before him, and to rely on the relative absence of

7

statements or observations that Hager was in distress. Hager's argument to the contrary is simply a request to reweigh the evidence, which the court may not do. *See Zoch v. Saul,* 981 F.3d 597, 602 (7th Cir. 2020).

Hager points to one record in which a healthcare provider quoted her as saying that her "anxiety level is so high that she no longer feels depressed." R. 704. But that is one snapshot in time, which isn't enough to show disability. *See Barnhart v. Walton*, 535 U.S. 212, 218 (2002) (inability to work must last at least 12 months). Hager cites no evidence that she consistently reported such feelings to healthcare providers.

The ALJ's evaluation of Hager's subjective symptoms is supported by substantial evidence, and Hager hasn't shown that the ALJ made any errors in evaluating her credibility.

## B. Opinion evidence

### 1. Joseph Roe

Joseph Roe is a psychologist who performed a consultative examination of Hager. He found that Hager would not be able to perform simple work activities, get along with supervisors or coworkers, or sustain concentration because of her "lack of emotional regulation and intense mood swings." R. 692–93. The ALJ noted that Roe was an expert in clinical psychology, that he conducted a "thorough diagnostic evaluation," and that he was familiar with the relevant rules and regulations. R. 24. But the ALJ did not find Roe's opinion persuasive for several reasons. *Id.* Specifically, the ALJ said that Roe examined Hager only once, he relied heavily on her subjective complaints, and he didn't explain how his examination supported his opinions. *Id.* The ALJ also said that Roe's opinion was inconsistent with the evidence the ALJ discussed in making his credibility determination: Hager's lack of treatment and the lack of evidence of severe symptoms in the medical records. *Id.*

8

The court has already concluded that substantial evidence supports the ALJ's findings that Hager's medical records and her failure to seek treatment undermine her disability claim. Those reasons alone might be enough to sustain the ALJ's decision to reject Roe's opinion. But the court concludes that the ALJ's other reasons are supported as well.

In response to the ALJ's finding that Roe failed to explain how his opinions were supported by his examination, Hager says that *the ALJ* didn't adequately explain why he believed that. But it's not clear what else the ALJ should have said. Hager copies several paragraphs of Roe's report into her brief as evidence that Roe supported his opinions with clinical observations, but she doesn't identify any specific observations that contradict the ALJ's finding. And the court's review of Roe's report revealed none. The court agrees with the ALJ that Roe failed to draw a connection between his examination and his opinions regarding Hager's limitations. Instead, his finding that Hager suffers from a "lack of emotional regulation and intense mood swings" appears to rely entirely on Hager's statements and not on any testing or his own observations.

The court of appeals has held repeatedly the ALJ is entitled to discount a medical opinion that rests on the claimant's self-reporting. *See, e.g., Apke v. Saul,* 817 F. App'x 252, 256–57 (7th Cir. 2020); *Alvarado v. Colvin,* 836 F.3d 744, 748 (7th Cir. 2016); *Ketelboeter v. Astrue,* 550 F.3d 620, 625 (7th Cir. 2008); *Diaz v. Chater,* 55 F.3d 300, 307 (7th Cir. 1995). Hager contends that *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019), and *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015), created an exception to that rule for psychiatric and psychological evaluations. In *Price*, the court stated that "psychiatric assessments normally are based primarily on what the patient tells the psychiatrist" and that psychiatrists have "professional training and experience" that teach them "how to discount exaggerated

statements by his patients." 794 F.3d at 840. In *Mischler,* the court made a similar point that a psychiatrist can assess a claimant's subjective complaints "through the objective lens of her professional expertise." 766 F. App'x at 375.

Unfortunately, neither *Mischler* nor *Price* discuss the numerous cases holding that an ALJ may consider a medical opinion's reliance on the claimant's self-reporting when deciding how much weight to give the opinion. That leaves some uncertainty regarding how to reconcile the two lines of cases, particularly because cases like *Alvarado* involved a psychologist's mental health assessment. But the court doesn't read *Mischler* and *Price* as prohibiting an ALJ from discounting a mental health opinion because it relies primarily on the claimant's subjective complaints. Rather, the key question is whether the report of the psychologist or psychiatrist indicates that he or she used "professional expertise" to assess the claimant's credibility. *See Behlman v. Saul,* No. 19-C-1147, 2020 WL 6889187, at *5 (E.D. Wis. Nov. 24, 2020) (ALJ's decision to discount mental health opinions was reasonable because "there [was] no indication that [the doctor] assessed [the claimant's] complaints and subjective reports of her symptoms 'through the objective lens of [his] professional expertise'"); *Derry v. Berryhill*, No. 18-cv-90-slc, 2019 WL 1856960, at *6 (N.D. Ind. Apr. 24, 2019) (same). For example, some psychological assessment tools include questions designed to detect malingering or exaggeration.

In this case, Hager points to nothing in Roe's report indicating that he used his training or experience to determine whether Hager was accurately reporting her symptoms. Rather, when discussing her symptoms, Roe simply identified what Hager "described," "report[ed]," or "said." R. 689–93. Although he made observations and performed tests, he did not connect any of those observations or the results of the tests to any of his findings. So the ALJ didn't err by considering Roe's reliance on Hager's subjective complaints.

Hager also says that the ALJ should have considered that Roe's opinion was consistent with two other documents in the record: (1) the opinion of Neil Johnson, a specialist in internal medicine who conducted a physical examination of Hager; and (2) a third-party adult function report prepared by Dixie Weber, Hager's mother. Johnson wrote that Hager has "significant psychiatric issues" and appears to have "some level of anxiety." R. 696, 699. Weber's report included the following statements about Hager: (1) she "has extreme anxiety and depression"; (2) she is a "hoarder"; (3) she "often stays up through the night because she can't sleep"; (4) she doesn't take medication for mental health issues because she is "afraid of getting any official mental health diagnosis"; (5) she likes spending time with her daughter and going shopping; (6) she has only a few friends and doesn't go out much; (7) she has difficulty completing tasks; and (8) she gets "overwhelmed easily." R. 321–28.

The ALJ considered the results of Johnson's physical examination, but the ALJ didn't discuss Johnson's statements about Hager's mental health. That wasn't an error because Johnson isn't a mental health expert, he didn't conduct a mental health evaluation, and he provided no opinions about specific mental health limitations that Hager has.

As for Weber, the ALJ said that her third-party report wasn't persuasive because she isn't "medically trained to make exacting observations as to the dates, frequencies, types, and degrees of medical signs and symptoms, or the frequency or intensity of unusual moods or mannerisms." R. 25. The ALJ also said that Weber's report was "not consistent with the preponderance of the opinions and observations by medical professionals." *Id.* Hager says that Weber's observations about Hager's conduct provide additional support for Roe's findings that were based on Hager's subjective complaints. But Roe's proposed limitations were based on Hager's allegations that she suffers from mood swings and is unable to regulate her emotions.

11

Hager points to nothing in Weber's statement that supports such a finding, and the court's review of the report didn't reveal any support.

The ALJ's decision to discount Roe's opinion is supported by substantial evidence.

### 2. Karin Towers

Karin Towers is a state-agency psychological consultant who reviewed Hager's medical records. She found that Hager could: (1) carry out simple, routine tasks while maintaining concentration, persistence, and pace within "acceptable" tolerances; (2) tolerate brief social interactions; and (3) adapt to basic changes in routine. R. 24–25. The ALJ wrote the following about Towers's opinion:

> Dr. Towers is a medical specialist, she thoroughly reviewed the bulk of the available medical evidence in the record, and she has an understanding of social security disability programs and evidentiary requirements. I will note that Dr. Towers did not have access to the record as a whole or perform an in-person evaluation of the claimant. Nevertheless, Dr. Towers provided opinions that are generally consistent with and well supported by the medical evidence of record as a whole, which ultimately fails to show disabling psychological pathologies.

R. 25. Hager contends that the ALJ failed to explain how Towers's opinion was supported by the record, and he failed to acknowledge problems with the opinion, such as internal inconsistencies.

The ALJ's discussion of Towers's opinion was terse, but Hager hasn't identified an error that requires a remand. As for the ALJ's failure to specifically identify the portions of the record that supported Towers's opinion, the ALJ had already devoted several pages of his decision to explaining why the record didn't support Hager's disability claim. The ALJ wasn't required to reiterate the same analysis. The court must "read the ALJ's decision as a whole," *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004), and may "not discount [the ALJ's reasoning]

simply because it appears elsewhere in the decision," *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015).

As for the alleged problems with Towers's opinion, the ALJ wasn't required to discuss those either. The ALJ didn't say that he was relying on Towers's opinion. Rather, he simply noted that the opinion was consistent with the record. The ALJ isn't required to adopt a particular medical opinion or any opinion at all. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[A]n ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians."). And Hager doesn't contend that the ALJ's decision lacks adequate support without the Towers opinion. So the court need not consider Hager's objections to that opinion.

ORDER

IT IS ORDERED that that the decision of the commissioner is AFFIRMED and the August 10, 2021 oral argument is CANCELED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered July 22, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge